```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

SUMMIT FAMILY PRACTICE, P.C.   :   CIVIL ACTION
                               :
        v.                     :
                               :
THE PHILADELPHIA               :
CONTRIBUTIONSHIP INSURANCE     :
COMPANY                        :   NO. 02-3783

MEMORANDUM

Dalzell, J.                                     March 19, 2003

Summit Family Medical Practice ("Summit") brings this action for breach of contract and for relief under the Pennsylvania bad faith statute[1]. Before us is the motion for summary judgment of defendant The Philadelphia Contributionship Insurance Company ("the Contributionship"), in which it contends that Summit's claims are barred because Summit did not file a timely proof of loss.

We limited discovery and summary judgment so that the parties would first address the threshold issue of proof of loss, a potentially case-dispositive issue. Order of November 6, 2002 (Doc. No. 23). For the reasons that follow, we will now grant the motion.

---

[1] 42 Pa. Cons. Stat. Ann. § 8371.

I. Background[2]

The following facts are established from the record as not in dispute.

The Contributionship sold Summit a flood insurance policy which it issued Summit under the National Flood Insurance Program, described below.  Compl., Ex. A; Def.'s Mem. L (Doc. No. 18) at ¶ 2.  On June 17, 2001, Summit suffered a flood.  Pl.'s Mem. L. (Doc. No. 28) at 1; Def.'s Mem. L. at ¶ 1.  It notified the Contributionship in writing the next day.  Pl.'s Mem. L. at 1-2; Def.'s Mem. L. at ¶ 5.  The Contributionship sent a claims adjuster to Summit's premises to investigate the loss.  Pl.'s Mem. L. at 2; Def.'s Mem. L. at ¶ 6.  At no time did Summit provide the Contributionship a proof of loss, as the policy requires.  Pl.'s Mem. L. at 2-3; Def.'s Mem. L. at ¶ 8.

---

[2] Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, a court must view the evidence, and make all reasonable inferences from it, in the light most favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986).  Once the moving party carries this initial burden, the nonmoving party must "come forward with 'specific facts showing there is a genuine issue for trial.'"  Id.  at 587 (quoting Fed. R. Civ. P. 56(e)).  The court must inquire "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Lobby, 477 U.S. at 251-52; Tabas v. Tabas, 47 F.3d 1280, 1287 (3d Cir. en banc 1995).

Article 9, Section J of the policy states that in the event of a loss the insured must notify the insurer in writing as soon as practicable <u>and</u> submit a sworn proof of loss setting forth the specifics of the loss within sixty days:

> J. **Requirements in Case of Loss**: Should a flood loss occur to your insured property, you must:
>
> 1. Notify us in writing as soon as practicable;
> ...
> 3. Within 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the policy signed and sworn to by you and furnishing us with the following information:
>
> a. The date and time of the loss;
>
> b. A brief explanation of how the loss happened;
>
> c. Your interest in the property damaged (for example, "owner") and the interest, if any, of others in the damaged property;
>
> d. The actual cash value or replacement cost, whichever is appropriate, of each damaged item of insured property and the amount of damages sustained;
>
> e. Names of mortgagees or anyone else having a lien, charge or claim against the insured property;
>
> f. Details as to any other contracts of insurance covering the property, whether valid or not;
>
> g. Details of any changes in ownership, use, occupancy, location or possession of the insured property since the policy was issued;
>
> h. Details as to who occupied any insured building at the time of loss and for what purpose; and

>   i.  The amount you claim is due under this
>       policy to cover the loss, including
>       statements concerning:
>
>       (1) The limits of coverage stated in the
>           policy; and
>
>       (2) The cost to repair or replace the
>           damaged property (whichever costs less).

Insurance Policy, Art. 9, § J, in Complaint, Ex. A.

Summit did not provide a sworn proof of loss in conformity with § J.  As a surrogate, Summit presents an affidavit in its response to the motion for summary judgment claiming that "Summit Family Practice, P.C. provided The Philadelphia Contributionship Insurance Company with details of other insurance, specifications of the damaged building, detailed repair estimates and an inventory of the damaged property." Shomer[3] Aff. at ¶ 4, in Pl.'s Mem. L., Ex. D.

## II. Discussion

The National Flood Insurance Program ("NFIP"), pursuant to which the Contributionship issued the flood insurance policy, is a federally supervised and guaranteed insurance program. Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 165 (3d Cir. 1998).  "Congress created the program, among other things, to limit the damage caused by flood disasters through prevention and protective measures, spread the risk of flood damage among many private insurers and the federal government, and make flood insurance available on reasonable terms and conditions to those

---

[3] Dr. Gerald Shomer, D.O., is a doctor and partner at Summit.

in need of it." Id. (quotation and footnote omitted). NFIP promotes affordable flood insurance in flood-prone areas where it would otherwise be unavailable. Id. at n.2; Gowland v. Aetna, 143 F.3d 951, 953 (5th Cir. 1998); Brookville Mining Equip. Corp. v. Selective Ins. Co. of Amer., 74 F. Supp. 2d 477, 479 (W.D. Pa. 1999).

In 1983, the Federal Emergency Management Agency ("FEMA"), which administers the NFIP, created the "Write Your Own" ("WYO") program, under which private insurance companies, like the Contributionship, issue flood insurance policies. Van Holt, 163 F.3d at 165. WYO companies, however, are agents of the federal government. Id. at 165-66. "[R]egardless whether FEMA or a WYO company issues a flood insurance policy, the United States treasury funds pay off the insureds' claims." Id. at 165.

Accordingly, the federal government mandates the terms and conditions of WYO policies. Id. Absent the express written consent of the Federal Insurance Administrator, all WYO insurers must issue, without alteration, the Standard Flood Insurance Policy found in the appendix of 44 C.F.R. § 61. 44 C.F.R. §§ 61.4(b), 61.13(d); Van Holt, 163 F.3d at 165-66. The policy that the Contributionship issued is a Standard Flood Insurance Policy. Accordingly, its terms, including the proof of loss condition at the core of this dispute, are mandated by FEMA's regulation.

Insurance policies issued pursuant to federal regulatory programs are strictly enforced. See Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384-85 (1947) ("[T]he Wheat Crop

Insurance Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance."); Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 420-34 (1990).  For this reason, and because a WYO insurer is a fiscal agent of the United States, which bears ultimate responsibility for paying flood insurance losses, the failure of a flood policy insured to file a timely proof of loss is fatal to recovery.  See Gowland v. Aetna, 143 F.3d 951, 954 (5th Cir. 1998); Messa v. Omaha Prop. & Cas. Ins. Co., 122 F. Supp. 2d 523 (D.N.J. 2000); Brookville Mining Equip. Corp. v. Miller Welding & Machine Co., 74 F. Supp. 2d 477, 480 (W.D. Pa. 1999).

    Summit maintains that although it did not provide a sworn proof of loss, it substantially complied with the proof of loss requirement.  As noted, it premises this factual assertion on a single statement in Dr. Shomer's affidavit, "Summit Family Practice, P.C. provided The Philadelphia Contributionship Insurance Company with details of other insurance, specifications of the damaged building, detailed repair estimates and an inventory of the damaged property."  Shomer Aff. at ¶ 4.  Summit cites Conrad v. Omaha Property and Casualty, No. 94-4087, 1995 WL 350418 (E.D. Pa. June 7, 1995) (O'Neill, J.), as persuasive authority.

    In Conrad, Judge O'Neill did indeed hold that:
> Though plaintiff never filed a proof of loss, my review of...her policy--which

> specifies the information the insured is to provide in a proof of loss--convinces me that defendants had substantially all the information which the proof of loss would have provided when they denied plaintiff's claim. ... I conclude that plaintiff complied substantially with the policy's proof of loss requirement and that her failure to comply strictly with the policy's proof of loss requirement does not bar her claim.

Id. at *4.

Judge O'Neill decided Conrad without the benefit of Van Holt. More to the point, after Van Holt, Conrad's vitality is doubtful. Conrad recognized that FEMA policies must be strictly enforced, id. at *1, but differentiated between FEMA policies and those that WYO insurers issued. Conrad held that WYO policies need only be substantially complied with. Id. at *1-3. After Van Holt, this distinction is no longer tenable. Contrary to Conrad at *3, Van Holt teaches that "a suit against a WYO company is the functional equivalent of a suit against FEMA," "regardless whether FEMA or a WYO company issues a flood insurance policy, the United States treasury funds pay off the insureds' claims," and "a WYO is a fiscal agent of the United States." Van Holt, 163 F.3d at 165-66.

We therefore cannot agree with Summit's argument that substantial compliance with the proof of loss clause of a flood insurance policy will suffice.[4]

---

[4] Summit also argues that because the Contributionship did not remind it to file a proof of loss, its failure to comply with the proof of loss provision should not be fatal. This argument cannot succeed because, as we have held, the terms and
(continued...)

Furthermore, Summit has not presented sufficient evidence to establish that it substantially complied with the proof of loss clause. Summit relies entirely on a conclusory assertion in Dr. Shomer's affidavit -- untethered to time and place, and shorn of any specifics -- to support its argument that it gave the Contributionship all the information that the proof of loss clause demanded. On summary judgment, Summit must "come forward with specific facts." See supra at note 2 (discussing summary judgment standard). The averment in the Shomer affidavit is neither factual nor specific. It does not suggest who at Summit gave the information, whom at the Contributionship the information was given to, or even what information was given.[5] Assuming, arguendo, that substantial compliance remains sufficient, Summit has not produced enough evidence that it substantially complied with the proof of loss clause to surmount summary judgment.

Since Summit did not submit a sworn proof of loss, and the terms and conditions of flood insurance policies must be

---

[4] (...continued)
conditions of insurance policies issued pursuant to federal regulation must be strictly enforced. Under the plain language of the policy, Summit was required to file a proof of loss. The Contributionship was not required to remind it to file a proof of loss.

[5] The affidavit also does not make clear that it is based on personal knowledge, as Rule 56 requires. Shomer Aff.; Fed. R. Civ. P. 56(e).

strictly enforced, the Contributionship is entitled to summary judgment.[6]  An Order follows.

---

[6] Summit's failure to comply with the proof of loss clause negates not only its breach of contract claim, but also its bad faith claim.  An insurer does not act in bad faith by refusing to pay for a loss that it does not have a duty to indemnify.  Lucker Mfg. v. Home Ins. Co., 23 F.3d 808, 821 n.19 (3d Cir. 1994) ("Because we find that The Home was in breach of neither its duty to defend nor its duty to indemnify, it did not act in bad faith and did not violate 42 Pa.Cons.Stat. § 8371."); Brookville Mining, 74 F. Supp. 2d at 482 ("Because we find that Selective had no duty to indemnify plaintiffs, it did not act in bad faith in violation of 42 Pa. C.S. § 8371.").